UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NATALIE GRAINGER,

                       Plaintiff,                    Civil Action No.: 7:23-cv-01802

        - against -

                                                **ANSWER AND DEFENSES**

WESTCHESTER COUNTRY CLUB, INC., MARK
CHRISTIANA and TOM NEVIN,

                       Defendants.
-----------------------------------------------------------------X

Defendants WESTCHESTER COUNTRY CLUB, INC. ("WCC"), MARK CHRISTIANA ("Christiana"), and TOM NEVIN ("Nevin") (collectively, "Defendants"), by and through their attorneys, GORDON REES SCULLY MANSUKHANI LLP, hereby submit the following as their answer and defenses to the complaint (the "Complaint") filed by Plaintiff NATALIE GRAINGER ("Grainger" or "Plaintiff"):

## ANSWERING "PRELIMINARY STATEMENT"

1. Deny the allegations set forth in paragraph "1" of the Complaint, and aver that WCC is, in fact, a family-oriented athletic, social and recreational organization that has earned its reputation as a premier membership club for over a century, and that WCC hired Grainger as its Squash Director in 2018, though unfortunately WCC thereafter realized that Grainger was not fulfilling the requirements and responsibilities as expected for her role and as agreed upon at the onset of her employment with WCC.

2. Deny the allegations set forth in Paragraph "2" of the Complaint, and aver that there is no record of Grainger raising complaints of the nature set forth in this Paragraph at any time until *after* WCC's Racquets Committee had lost faith in Grainger's ability or desire to fulfill

1

the job requirements, and recommended that WCC's Board of Governors (the "Board") meet to discuss the future of Grainger's employment.

3. Deny the allegations set forth in Paragraph "3" of the Complaint, and aver that, on March 7, 2022, in response to an email sent to Grainger on March 3, 2022 by the Chair of WCC's Racquets Committee, Grainger forwarded the email to two Board members and respectfully refer this Honorable Court to a copy of the document for the complete and accurate contents thereof.

4. Deny the allegations set forth in Paragraph "4" of the Complaint, and aver that, WCC's Racquets Committee lost faith in Grainger and decided to recommend that the Board meet to discuss the future of Grainger's employment *prior to* Grainger's March 7, 2022 email, and that Christiana and Nevin met with Grainger on March 16, 2022 to inform her that WCC would not continue to employ her and gave her the opportunity to resign, as it had done with other employees, rather than have her employment terminated.

5. Deny the allegations set forth in Paragraph "5" of the Complaint, and aver that, after Grainger had been told on March 16, 2022 and March 22, 2022 that she had the option to choose to resign or WCC was prepared to terminate her employment, Grainger was terminated on or about March 26, 2022 for cause, including but not limited to: (1) fostering a hostile and abusive work environment for subordinate employees; (2) taking excessive time off without approval or submitting requests via her supervisor or Human Resources as required by her offer letter and WCC's policies and procedures; and (3) failure to follow the appropriate chain of command as required by her offer letter and WCC's policies and procedures in the course of performance of her job.

6. Deny the allegations set forth in Paragraph "6" of the Complaint, except admit that Plaintiff purports to proceed under the statutes described in this Paragraph.

## ANSWERING "ADMINISTRATIVE PROCEDURES"

7. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "7" of the Complaint, except admit that Plaintiff purports to have filed a Charge of Discrimination with the Equal Employment Opportunity Commission on January 13, 2023 – over six (6) months after her termination – alleging violations of the statute described in this Paragraph.

## ANSWERING "JURISDICTION AND VENUE"

8. Deny the allegations set forth in Paragraph "8" of the Complaint, except admit that Plaintiff purports to state the basis for this Court's jurisdiction as set forth therein.

9. Deny the allegations set forth in Paragraph "9" of the Complaint, except admit that Plaintiff purports to state the basis for this Court's venue as set forth therein.

## ANSWERING "PARTIES"

10. Deny knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph "10" of the Complaint, except admit that Grainger is the former Director of Squash at WCC and Grainger was an employee of WCC.

11. Admit the allegations set forth in Paragraph "11" of the Complaint.

12. Deny the allegations set forth in Paragraph "12" of the Complaint, except admit that Christiana became President of WCC effective September 15, 2021 and continuing to date.

13. Deny the allegations set forth in Paragraph "13" of the Complaint, except admit that Nevin is domiciled in South Carolina.

## ANSWERING "FACTS"

**I.      ANSWERING "BACKGROUND"**

14.     Deny the allegations set forth in Paragraph "14" of the Complaint, and aver that WCC is, in fact, a family oriented membership club in Westchester that has been ranked 29th of 4,000 private clubs in the United States, is proud to have earned and maintained the "Platinum Club" distinction and offer its members world-class facilities, including two Championship Golf Courses, a Beach Club on Long Island Sound and comprehensive Tennis and Squash Facilities.[1][2][3]

15.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "15" of the Complaint.

16.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "16" of the Complaint.

17.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "17" of the Complaint.

18.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "18" of the Complaint.

19.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "19" of the Complaint.

---

[1] Defendants admit that Footnote 1 of the Complaint contains a link to WCC's website, and that the referenced language in Paragraph 14 appears on WCC's website, but respectfully refer this Honorable Court to WCC's website for a complete and accurate statement of the contents thereof.

[2] Defendants admit the allegations contained in Footnote 2, and aver that WCC is proud to have earned the "Platinum Club" distinction.

[3] Defendants admit that Footnote 3 of the Complaint contains a link to WCC's website, and that the referenced language in Paragraph 14 appears on WCC's website, but respectfully refer this Honorable Court to WCC's website for a complete and accurate statement of the contents thereof.

20. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "20" of the Complaint.

21. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "21" of the Complaint.

## II.    ANSWERING "WCC HIRES GRAINGER"[4]

22. Admit the allegations set forth in Paragraph "22" of the Complaint.[5]

23. Admit the allegations set forth in Paragraph "23" of the Complaint refer to Grainger's job duties and responsibilities, but deny that Grainger adequately and consistently performed these responsibilities during the course of her employment with WCC, and aver that one of Grainger's oft-disregarded core job responsibilities was to be present at WCC during her scheduled work hours to oversee all coaching and programming as described in this Paragraph.

24. Deny the allegations set forth in Paragraph "24" of the Complaint, except admit that Grainger's compensation during her employment with WCC consisted of multiple components, including a base salary and additional compensation from lessons, clinics, camps, tournaments and professional merchandise.

25. Deny the allegations set forth in Paragraph "25" of the Complaint.

26. Deny the allegations set forth in Paragraph "26" of the Complaint, and aver that it was an essential component of Grainger's job to coach and mentor youth WCC members, which she abandoned at times in favor of vacationing in Florida or working as a coach for a local school without WCC's knowledge or approval during hours when she was expected to be at WCC.

---

[4] To the extent that this heading constitutes an allegation, Defendants admit that WCC hired Grainger, and respectfully refer this Honorable Court to Paragraph 1 of this Answer and the averment(s) contained therein.

[5] Defendants admit that, with the express approval of WCC gained through Mr. Witham's open discussions with the Board and Racquets Committee, Mr. Witham was permitted to maintain a court lighting business that did not, at any time, interfere with his job performance or duties at WCC.

27. Deny the allegations set forth in Paragraph "27" of the Complaint, and aver that, once the Board decided to start a pickleball program for the WCC community, Grainger created conflict with WCC's Director of Tennis and Paddle by insisting that she lead the program, and when WCC informed her that she would be co-directing the program with him, engaged in a pattern of unprofessional, inappropriate and hostile communications with and about the co-Director, including an email to the Chair of WCC's Board and the Board's Racquets Liaison engaging in aggressive and unrelenting objections about her co-Director, in clear disregard of her chain of reporting, causing Nevin and WCC's Human Resources representative to hold a counseling meeting with Grainger about appropriate communications and complaint protocol.

28. Deny the allegations set forth in Paragraph "28" of the Complaint, except admit that Grainger became Co-Director of Pickleball in or around 2021, and was eligible to receive 50% of all annual pickleball revenues moving forward, and aver that Grainger did not fulfill her job duties related to developing the pickleball program, as she made no progress with obtaining pricing information for WCC to build a pickleball court, enlisting WCC for a local competitive pickleball league, or helping manage the timeline for launching and building the pickleball program.

29. Deny the allegations set forth in Paragraph "29" of the Complaint.

30. Deny the allegations set forth in Paragraph "29" of the Complaint.

31. Deny the allegations set forth in Paragraph "31" of the Complaint, except admit that Grainger was the only female director in the sports department at WCC during the course of her employment, and aver that there were several supervisor-level positions held by women at WCC during the course of Grainger's employment, including Director of Human Resources,

Director of Catering, Director of Publicity, Director of Membership, Guest Services Manager, Director of Housekeeping, and Assistant Restaurant Manager.[6]

### III.   ANSWERING "GRAINGER BECOMES A WHISTLEBLOWER AND COMPLAINS ABOUT SEXUAL HARASSMENT"[7]

32.   Deny the allegations set forth in Paragraph "32" of the Complaint, and aver that the only complaints of a hostile work environment were against Grainger, who was subject to multiple complaints from subordinates and colleagues that she had fostered a toxic work environment including towards younger women.

33.   Deny the allegations set forth in Paragraph "33" of the Complaint, except deny knowledge or information sufficient to form a belief as to any "concerns" that Grainger may or may not have had, and aver that Grainger did not raise any purported "concerns" of this alleged relationship until after WCC's Racquets Committee lost faith in Grainger and decided to recommend that the Board meet to discuss the future of Grainger's employment.

34.   Deny the allegations set forth in Paragraph "34" of the Complaint, and aver that WCC's Employee Handbook prohibits employees from fraternizing with Club members on Club grounds, and respectfully refer this Honorable Court to a copy of the document for a complete and accurate statement of the contents thereof.

35.   Deny the allegations set forth in Paragraph "35" of the Complaint, and aver that Employee 1 received two employee disciplinary notices during the course of her employment which were authored by Grainger and made no mention of any alleged "inappropriate relationships

---

[6] Defendants deny the allegations contained in Footnote 5 of the Complaint, and aver that there were female Board member(s) during the entire course of Grainger's employment, including a female Vice President of the Board from 2017-2022, and that there have been female Board member(s) dating back to on or about 1989, including a female Chair of the Board.

[7] To the extent that this heading constitutes an allegation, Defendants expressly deny it.

7

with male Club members," and was terminated from WCC by Grainger for "consistent failure to meet the performance requirements of [her] position as Squash professional."

36. Deny the allegations set forth in Paragraph "36" of the Complaint, except admit that, beginning in or around June 2021, Employee 2 began a consensual relationship with a WCC member.

37. Deny the allegations set forth in Paragraph "37" of the Complaint, and aver that Grainger only brought up the alleged concerns with Employee 2's performance after Employee 2 submitted a resignation letter detailing the toxic work environment to which Granger subjected Employee 2 and her colleagues.[8] [9]

38. Deny the allegations set forth in Paragraph "38" of the Complaint, except admit that Grainger claims to have counseled Employee 2 about alleged issues with Employee 2's performance and aver that Grainger did not ask for management or Human Resources assistance from anyone at WCC to "counsel" Employee 2 about these alleged issues.

39. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "39" of the Complaint, and aver that, despite Grainger's claim that she was concerned about these alleged text messages in October 2021, Grainger did not make any mention of these alleged text messages between Employee 2 and a WCC member to any Board member, management or Human Resources until after WCC's Racquets Committee lost faith in Grainger and decided to recommend that the Board meet to discuss the future of Grainger's employment.

---

[8] Defendants deny the allegations in Footnote 6 of the Complaint, and aver that, upon information and belief, the member in question was appropriately charged for all time on the court.

[9] Defendants deny the allegations in Footnote 7 of the Complaint, and aver that Employee 2 essentially ran the squash program at WCC while Grainger was absent from the squash facility so often on personal business or coaching for a local school.

40. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "40" of the Complaint, and aver that, the night of the incident in question, Grainger questioned whether a bartender had drugged Employee 2 (i.e., not Member 1), and neither Grainger, Employee 2 nor Employee 2's sister believed that Member 1 in any manner acted inappropriately toward Employee 2.

41. Deny the allegations set forth in Paragraph "41" of the Complaint, and aver that Grainger did not make any complaints or mention of this incident to Board Member 1 or anyone at WCC at any time until after WCC's Racquets Committee lost faith in Grainger and decided to recommend that the Board meet to discuss the future of Grainger's employment.

42. Deny the allegations set forth in Paragraph "42" of the Complaint, and aver that, during the start of the Covid-19 pandemic, when squash pros were furloughed due to New York State regulations, Member 1 generously provided Employee 2 and other squash pros – both within and beyond the WCC community, and both male and female – with monetary contributions to offset and bridge economic hardships for employees and their families during the shutdown and as a supplement to the funds collected by WCC members to be divided amongst furloughed employees.

43. Deny knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph "43" of the Complaint, and aver that any allegations of sexual assault against Employee 3 by a WCC member are entirely unfounded, and that Employee 3 left her employment with WCC in or around 2012. Defendants further aver that there is no record of Grainger making any comment, statement, or complaint to anyone at WCC regarding this incident at any time until the filing of the instant Complaint.

44. Deny the allegations set forth in Paragraph "44" of the Complaint.

45. Deny the allegations set forth in Paragraph "45" of the Complaint, and aver that the first time Grainger brought up any mention of harassment was after WCC's Racquets Committee lost faith in Grainger and decided to recommend that the Board meet to discuss the future of Grainger's employment.

46. Deny the allegations set forth in Paragraph "46" of the Complaint, and respectfully refer this Honorable Court to a copy of the document for the complete and accurate contents thereof.

47. Deny the allegations set forth in Paragraph "47" of the Complaint, and aver that the meeting Grainger references in this Paragraph was actually a meeting called for the purpose of investigating Employee 2's complaint about Grainger fostering a hostile work environment, wherein Grainger was told that, if she had truly "counseled" Employee 2 at any time about her work performance or her alleged relationship with a Club member, she should have had another manager present for the meeting and provided written documentation of the meeting to HR so that it could be documented in Employee 2's file, and wherein Grainger was again reminded of the appropriate reporting chain-of-command which she chose to disregard.

## IV.    ANSWERING "GRAINGER'S WRITTEN COMPLAINTS"[10]

48. Deny the allegations set forth in Paragraph "48" of the Complaint, except admit that Grainger sent an email on or about March 7, 2022, and respectfully refer this Honorable Court to a copy of the document for the complete and accurate contents thereof.

49. Deny the allegations set forth in Paragraph "49" of the Complaint as incomplete, inaccurate or misleading, except admit that Grainger's March 7, 2022 email contained these

---

[10] To the extent that this heading constitutes an allegation, Defendants expressly deny it.

allegations, and respectfully refer this Honorable Court to a copy of the document for the complete and accurate contents thereof.

## V. ANSWERING "THE CLUB TERMINATES GRAINGER'S EMPLOYMENT"[11]

50. Deny the allegations contained in Paragraph "50" of the Complaint, except admit that, on March 16, 2022, Grainger was informed by Christiana and Nevin that WCC's Racquets Committee lost faith in Grainger and had decided to recommend that the Board meet to discuss the future of Grainger's employment, and that the Board's decision was to terminate her employment, but the Board was willing to give her the opportunity to resign, and aver that this decision was made in the wake of her severe, continuing performance concerns, insubordination, failure to follow a reporting chain-of-command that was repeatedly described to her, decision to take a second job coaching squash for a local school without the required approval from WCC, and frequent unreported vacations when she was expected to be present on-site and working at WCC's squash center.

51. Deny the allegations set forth in Paragraph "51" of the Complaint, and aver that Grainger was told that the Board and Racquets Committee lost faith in her, as she had shown herself to be more concerned with her golf vacations and second unapproved job than her employment with WCC, as evidenced by actions including abandoning her post at WCC during a youth squash tournament that she organized without informing her supervisor or anyone in management. The only person she alerted was a subordinate who was newly hired as assistant squash pro.

52. Deny the allegations set forth in Paragraph "52" of the Complaint.

---

[11] To the extent that this heading constitutes an allegation, Defendants admit that WCC terminated Grainger's employment for cause on March 26, 2022, but deny Grainger's self-serving characterization of the reasons surrounding the termination.

53. Deny the allegations set forth in Paragraph "53" of the Complaint, except admit that Grainger helped assist Board Member 1's children in transitioning to collegiate athletes, and aver that Grainger regularly recorded herself as present at work when she was actually in Florida or elsewhere, including at her second job coaching for a local school.

54. Deny the allegations set forth in Paragraph "54" of the Complaint, except admit that Grainger received a merit increase in July 2019, and aver that Grainger was previously counseled in writing to record all vacation days using WCC's HR system.

55. Deny the allegations set forth in Paragraph "55" of the Complaint, except admit that Grainger affirmed that she would not resign from her position.

56. Deny the allegations set forth in Paragraph "56" of the Complaint, except admit that, on March 22, 2022, Nevin met with Grainger again to discuss whether she would resign or have her employment terminated.

57. Deny the allegations set forth in Paragraph "57" of the Complaint, except admit that Grainger protested the numerous valid reasons given for WCC's decision to end her employment.

58. Deny the allegations set forth in Paragraph "58" of the Complaint, except admit that Grainger was given the opportunity to resign her employment or have WCC terminate her employment for cause.

59. Deny the allegations set forth in Paragraph "59" of the Complaint, except admit that Grainger quotes from WCC's policy on providing reference and employment verification requests for *any* employee who has departed WCC.

60. Deny the allegations set forth in Paragraph "60" of the Complaint, except admit that, on March 23, 2022, WCC requested that Grainger provide her decision about whether to resign on or before March 25, 2022.

61. Deny the allegations set forth in Paragraph "61" of the Complaint as incomplete, inaccurate and/or misleading, except admit that, on March 25, 2022, Grainger refused to resign and sent the quoted email on or around March 25, 2022, and respectfully refer this Honorable Court to a copy of the email for a complete and accurate statement of the contents thereof.

62. Deny the allegations set forth in Paragraph "62" of the Complaint.

63. Deny the allegations set forth in Paragraph "63" of the Complaint.

64. Deny the allegations set forth in Paragraph "64" of the Complaint, except admit that, consistent with communications that Grainger had received since March 16, 2022 regarding WCC's position based on Board and Racquets Committee discussions before this date, once Grainger made clear that she would not resign from her position, WCC terminated Grainger's employment on March 26, 2022.

65. Deny the allegations set forth in Paragraph "65" of the Complaint, and aver that WCC's Racquets Committee unanimously voted to recommend that the Board meet to discuss the future of Grainger's employment with WCC, which later led to the decision to terminate Grainger.

66. Deny the allegations set forth in Paragraph "66" of the Complaint.

67. Deny the allegations set forth in Paragraph "67" of the Complaint.

68. Deny the allegations set forth in Paragraph "68" of the Complaint.[12]

69. Deny the allegations set forth in Paragraph "69" of the Complaint, and aver that Grainger was furloughed at the outset of the Covid-19 pandemic, along with all but approximately

---

[12] Defendants deny the allegations in Footnote 8 of the Complaint.

fifty WCC employees deemed to be essential in accordance with state requirements; that during the time she was furloughed, Grainger received $25,000 from WCC's payroll as well as over $10,000 from the employee assistance fund created by WCC's members; and that, as an indoor sport, the squash program was re-opened later than certain outdoor sports pursuant to New York State regulations.

70. Deny the allegations set forth in Paragraph "70" of the Complaint.

### ANSWERING "FIRST CAUSE OF ACTION"

71. In response to Paragraph "71" of the Complaint, Defendants repeat and reaffirm each and every response made to paragraphs "1" through "70" of the Complaint as if fully set forth herein.

72. Deny the allegations set forth in Paragraph "72" of the Complaint and respectfully refers all questions of law to the court.

73. Deny the allegations set forth in Paragraph "73" of the Complaint.

74. Deny the allegations set forth in Paragraph "74" of the Complaint.

### ANSWERING "SECOND CAUSE OF ACTION"

75. In response to Paragraph "75" of the Complaint, Defendants repeat and reaffirm each and every response made to paragraphs "1" through "74" of the Complaint as if fully set forth herein.

76. Deny the allegations set forth in Paragraph "76" of the Complaint, and respectfully refer the court to the referenced statute.

77. Deny the allegations set forth in Paragraph "77" of the Complaint.

78. Deny the allegations set forth in Paragraph "78" of the Complaint.

## ANSWERING "THIRD CAUSE OF ACTION"

79. In response to Paragraph "79" of the Complaint, Defendants repeat and reaffirm each and every response made to paragraphs "1" through "78" of the Complaint as if fully set forth herein.

80. Deny the allegations set forth in Paragraph "80" of the Complaint, and respectfully refers the court to the referenced statute.

81. Deny the allegations set forth in Paragraph "81" of the Complaint.

82. Deny the allegations set forth in Paragraph "82" of the Complaint.

83. Deny the allegations set forth in Paragraph "83" of the Complaint.

## ANSWERING "FOURTH CAUSE OF ACTION"

84. In response to Paragraph "84" of the Complaint, Defendants repeat and reaffirm each and every response made to paragraphs "1" through "83" of the Complaint as if fully set forth herein.

85. Deny the allegations set forth in Paragraph "85" of the Complaint, except admit that, if WCC had terminated Plaintiff without cause within the first twenty-four months of her employment, it would have paid her a severance of one month's salary and continued medical coverage for a period of three months.

86. Deny the allegations set forth in Paragraph "86" of the Complaint.

## ANSWERING "PRAYER FOR RELIEF"

The "**WHEREFORE**" clause paragraph immediately following Paragraph "86" of the Complaint states is a request for relief to which no responsive pleading is required. To the extent a responsive pleading is required, Defendant denies each and every allegation contained therein and further denies that Plaintiff is entitled to any relief whatsoever.

## AFFIRMATIVE AND OTHER DEFENSES

### AS AND FOR A FIRST DEFENSE

Plaintiff's complaint fails to state a claim in law or equity upon which relief may be granted.

### AS AND FOR A SECOND DEFENSE

The actions or omissions, if any, by Defendants do not constitute violations of the New York State Human Rights Law ("NYSHRL"), New York Not-for-Profit Corporations Law, or New York common law.

### AS AND FOR A THIRD DEFENSE

Plaintiff's claims are barred by her failure to exhaust administrative remedies.

### AS AND FOR A FOURTH DEFENSE

To the extent any acts or omissions were taken by Defendants, such acts or omissions have been for legitimate business considerations and have been taken in good faith, without any malice and without any intent to injure or harm her, and, therefore, are not violative of any statute, common law, or contract.

### AS AND FOR A FIFTH DEFENSE

To the extent Plaintiff has any damages, she has failed to mitigate such damages, and any damages that may be awarded to Plaintiff must be reduced accordingly.

### AS AND FOR A SIXTH DEFENSE

To the extent Plaintiff has sustained any injury or losses, such injury or losses are not attributable to Defendants.

### AS AND FOR A SEVENTH DEFENSE

Defendants did not aid, abet, ratify, condone, encourage, or acquiesce in any alleged

discriminatory or retaliatory conduct against Plaintiff.

## AS AND FOR AN EIGHTH DEFENSE

The allegations set forth in the Complaint are without merit, false, frivolous, retaliatory, and Defendants reserve the right to seek attorney's fees and costs in defending these baseless claims.

## AS AND FOR A NINTH DEFENSE

Any alleged unlawful discriminatory or retaliatory conduct attributed to Defendants in the Complaint consists of nothing more than what a reasonable person would consider petty slights and trivial inconveniences.

## AS AND FOR A TENTH DEFENSE

Defendants' acts and omissions, if any, were in good faith and without willfulness or discriminatory intent, and complied with all applicable laws, rules, regulations, standards, and statutes.

## AS AND FOR AN ELEVENTH DEFENSE

Defendants' acts and omissions, if any, do not warrant any award of punitive damages.

## AS AND FOR A TWELFTH DEFENSE

Plaintiff's alleged damages are speculative and conclusory, and are therefore unrecoverable.

## AS AND FOR A THIRTEENTH DEFENSE

Plaintiff's damages, if any, are wholly due and owing to her own actions.

## AS AND FOR A FOURTEENTH DEFENSE

Any and all tangible employment actions affecting Plaintiff were based on legitimate non-discriminatory, non-retaliatory reasons.

## AS AND FOR A FIFTEENTH DEFENSE

Some or all of Plaintiff's alleged injuries are due, in whole in part, to her own actions.

## AS AND FOR A SIXTEENTH DEFENSE

The Complaint is barred, in whole or in part, by Plaintiff's failure to properly perform all conditions precedent to suit.

## AS AND FOR A SEVENTEENTH DEFENSE

Plaintiff did not engage in activity protected under the statutes cited herein.

## AS AND FOR AN EIGHTEENTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the applicable statute(s) of limitations.

## AS AND FOR A NINETEENTH DEFENSE

Defendants exercised reasonable care to prevent and promptly eliminate any discriminatory conduct in the workplace. Plaintiff unreasonably failed to take advantage of preventative or corrective opportunities provided by Defendants or to otherwise avoid harm.

## AS AND FOR A TWENTIETH DEFENSE

Plaintiff's claims are frivolous and groundless and known by Plaintiff to be frivolous and groundless and without foundation in fact or law. Furthermore, this suit is being pursued in bad faith for vexatious reasons for the purpose of harassing Defendants.

## AS AND FOR A TWENTY-FIRST DEFENSE

Even if Plaintiff is entitled to recover damages, which Defendants expressly deny, Plaintiff may be barred or limited from recovering damages based on the doctrine of after-acquired evidence.

## AS AND FOR A TWENTY-SECOND DEFENSE

Some or all of Plaintiff's alleged injuries are or may be due, in whole or in part, to the actions of third parties over whom Defendants had no control.

## AS AND FOR A TWENTY-THIRD DEFENSE

Costs or damages alleged to be incurred in the future may not be recovered as they are remote, speculative, contingent and incapable of calculation.

## AS AND FOR A TWENTY-FOURTH DEFENSE

Plaintiff's claims are barred, reduced and/or limited pursuant to applicable statutory and common law regarding limitations of awards, caps on recovery, and set offs.

## AS AND FOR A TWENTY-FIFTH DEFENSE

Plaintiff was not treated less well than other employees because of her gender, sex, or any other category protected under applicable statutes.

## AS AND FOR A TWENTY-SIXTH DEFENSE

Plaintiff cannot establish a causal connection between any protected activity and any adverse action.

## AS AND FOR A TWENTY-SEVENTH DEFENSE

Plaintiff did not raise any good faith reports of any action or suspected action taken by or within WCC that is illegal, fraudulent or in violation of any adopted policy of WCC.

## AS AND FOR A TWENTY-EIGHTH DEFENSE

Plaintiff did not suffer any intimidation, harassment, discrimination, retaliation or other adverse employment consequence as a result of any report(s) she may have made.

## AS AND FOR A TWENTY-NINTH DEFENSE

Defendants reserve their right to amend this Answer or assert additional affirmative or other defenses as warranted by the development of the factual record in this case.

**WHEREFORE** Defendants respectfully demand judgment dismissing the Complaint in its entirety with prejudice, awarding Defendants reasonable attorneys' fees and costs incurred in defending against this false and frivolous action, and any further relief this Court deems just and proper.

Dated: New York, New York
May 18, 2023

          Respectfully Submitted,

          GORDON REES SCULLY
          MANSUKHANI, LLP

By: */s/ Mercedes Colwin*
    Mercedes Colwin
    John T. Mills
    Hannah Kucine
    *Attorneys for Defendants Westchester Country Club, Inc., Mark Christiana, and Tom Nevin*
    One Battery Park Plaza, 28th Floor
    New York, NY 10004
    (212) 269-5500 (Phone)
    (212) 269-5505 (Fax)
    mcolwin@grsm.com
    jtmills@grsm.com
    hkucine@grsm.com

TO: All parties *via* ECF