MERCEDES COLWIN
MCOLWIN@GRSM.COM

JOHN T. MILLS
JTMILLS@GRSM.COM

HANNAH KUCINE
HKUCINE@GRSM.COM



ATTORNEYS AT LAW
1 BATTERY PARK PLAZA, 28TH FLOOR
NEW YORK, NY 10004
WWW.GRSM.COM

October 30, 2023

**VIA ECF**
Hon. Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4150

    Re:   *Natalie Grainger v. Westchester Country Club, Inc., et al.*
             Civil Action No. 7:23-cv-01802

Dear Judge Seibel:

    This firm represents Defendants in connection with the above referenced matter. We write to seek the Court's intervention regarding an ongoing discovery dispute between the Parties. The Parties have met and conferred on multiple occasions regarding this dispute, but have been unable to reach a compromise.

    Defendants made the following requests for production to Plaintiff:

- Produce all communications between you and any current or former WCC employee concerning (i) Christiana, Nevin, or any past or present director, officer or employee of WCC; (ii) any of the allegations in the Complaint; and/or (iii) any aspect of your employment with WCC, including, without limitation, your responsibilities, the WCC squash program, or your performance.

- Produce all communications between you and any current or former WCC member concerning (i) Christiana, Nevin, or any past or present director, officer or employee of WCC; (ii) any of the allegations in the Complaint; and/or (iii) any aspect of your employment with WCC, including, without limitation, your responsibilities, the WCC squash program, or your performance.

- Produce all communications between you and any current or former WCC Board member concerning (i) Christiana, Nevin, or any past or present director, officer or employee of WCC; (ii) any of the allegations in the Complaint; and/or (iii) any aspect of your employment with WCC, including, without limitation, your responsibilities, the WCC squash program, or your performance.

Page 2

  Defendants' requests seek inarguably relevant information that is at the very heart of Plaintiff's claims and Defendants' defenses. Plaintiff has alleged that several members of WCC connected to WCC's squash program engaged in severe sexual harassment – and even assault – of WCC employees over a period of years without proper discipline. Defendants allege that Plaintiff was friendly with these very same members for the entirety of her employment with WCC, including the time period after she alleges improper activity took place. Plaintiff further alleges that the subordinate employee who made a hostile work environment complaint against Plaintiff was in a relationship with a WCC member that disrupted her work performance and that the hostile work environment complaint was made in bad faith after Plaintiff attempted to counsel her about her performance and the relationship. Defendants allege that Plaintiff was, in fact, treating this employee improperly, and that Plaintiff attempted to use the employee's alleged relationship as fodder to sow discord after the employee complained about Plaintiff. To summarize, these examples are part of a greater disagreement between the parties regarding the credibility of Plaintiff's claims considering her contemporaneous actions and relationships at the time she insists she was witness to misconduct. Examination of this dispute, which will be consequential to the outcome of this matter, requires Defendants to be able to accurately assess a wide scope of Plaintiff's communications with relevant individuals.

  To be clear, Plaintiff has made a significant production of responsive communications, but Defendants believe such production to be incomplete. It is clear to Defendants that Plaintiff has withheld portions of the relevant conversations. Defendants have been unable to ascertain the extent of such withholding, the method by which messages were chosen to be withheld, and the reason for each decision to withhold a portion of a conversation. Based on the Parties' discussion, it seems as though Plaintiff has used the ESI protocols to guide the entirety of her search, despite her independent discovery obligation to complete a reasonable search for discoverable information beyond the four corners of the ESI protocol. Further, when faced with Defendants' questions about how Plaintiff determined which communications to produce, Plaintiff alleged that Defendants had made no requests for communications with individuals other than Employee 2 and Employee 2's sister, though that is blatantly inaccurate based on the language cited above.

  The majority of Plaintiff's production came from a small handful of ongoing group conversations *via* text message or WhatsApp – Plaintiff's refusal to indicate how Plaintiff determined where a responsive conversation started or ended leaves Defendants with the reasonable conclusion that there are messages worthy of production that have, instead, been held back. This belief is further strengthened after examination of the conversations themselves, which appear to have been regular and ongoing despite the mere snippets received. Moreover, Plaintiff's contention that Defendants did not request communications with individuals beyond the two named above leads Defendants to believe that Plaintiff is withholding other conversations altogether. Specifically, Plaintiff has produced relatively few text message or email communications with WCC members and Board members despite the clear language of the above requests. This seems unlikely, as Plaintiff's own production shows she was regularly communicating with various members about lesson scheduling or WCC happenings and then relaying such information to WCC employees.[1] The underlying member communications are undeniably responsive as well.

---

[1] Defendants have further alleged that Plaintiff's employment was terminated because she regularly disregarded her chain of command and went to WCC members regularly rather than her supervisors to complain or try and enact particular policy changes she desired. Plaintiff's production indicates, on several occasions, that Plaintiff contacted one or more WCC members or Board members about particular grievances, but the underlying communications themselves have not been produced. It should go without saying that communications so central to a party's claims or defenses may not be withheld.

Page 3

Plaintiff's unilateral determination about where responsive, relevant communications start and end within a given conversation is akin to redacting otherwise discoverable messages – an act that is overwhelmingly disfavored in this Circuit. *See Christine Asia Co., Ltd. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. 2018) (collecting cases). The software used by Plaintiff to collect and produce text messages makes literal redaction unnecessary, as the user can choose exactly which messages in a larger thread to produce, but the intention is identical: to prevent relevant information from review. Such withholding "breed[s] suspicions" and "deprive[s] the reader of context." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, No. 08-CV-0333 (RJH) (DFE), 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009). In a case such as the instant matter where the Parties' dispute rests so heavily on the context provided by Plaintiff's contemporaneous conversations, Plaintiff's decision to withhold particular communications within relevant text message and WhatsApp threads is unduly prejudicial to Defendants and must be rectified.

As such, Defendants respectfully request that the Court resolve this dispute by ordering Plaintiff to produce additional relevant communications, or in the alternative grant Defendants an opportunity to file a motion to compel on this matter.

We thank Your Honor in advance for the Court's consideration.

    Respectfully submitted,

    GORDON REES SCULLY
    MANSUKHANI, LLP

    By:    */s/John T. Mills*

cc:    All Counsel of Record (via ECF)