

**Valdi Licul**
vlicul@wigdorlaw.com

May 13, 2024

**VIA ECF**

The Honorable Victoria Reznik
Federal Building and United States Courthouse
300 Quarropas St., Room 420
White Plains, NY 10601-4150

   Re: Natalie Grainger v. Westchester Country Club, Inc., et al.;
      Case No. 7:23-cv-01802 (CS) (VR)

Dear Judge Reznik:

We represent Plaintiff Natalie Grainger ("Plaintiff" or "Grainger") and write to respectfully request an order (1) quashing or limiting Defendants Westchester Country Club, Inc. ("WCC"), Mark Christiana and Tom Nevin (together, "Defendants") from forcing Plaintiff to respond to 256 Requests for Admissions ("RFAs") and (2) precluding Defendants from utilizing expert testimony unless they promptly disclose materials pursuant to Fed. R. Civ P. 26(a)(2) with sufficient time for Grainger to (a) depose Defendants' expert and (b) employ a rebuttal expert.

**I. BACKGROUND**

On March 2, 2023, Grainger filed this employment action alleging that Defendants violated federal and state anti-retaliation laws by terminating her employment because she protested sexual harassment. Both fact and expert discovery are scheduled to conclude on June 14, 2024. See Dkt. No. 60. Indeed, discovery is substantially concluded except for several previously noticed non-party depositions and certain limited documents requests.[1] To that end, on May 10, 2024, Grainger notified Defendants that she does not intend to use an expert for her case-in-chief but reserved the right to call a rebuttal expert. Grainger requested that Defendants promptly identify their proposed expert and provide the requisite expert disclosures so that she can depose Defendants' expert and employ a rebuttal expert. Defendants have yet to provide these disclosures.

On March 29, 2024, Defendants served Grainger with 256 RFAs. Grainger objected to the requests because, among other things, the number of requests was excessive and some of the requests were unduly vague.

On May 13, 2024, the parties met and conferred but were unable to resolve these issues.

---

[1] The parties have exchanged 86,880 pages of discovery and deposed ten witnesses.



## II.     REQUESTS FOR ADMISSIONS

"The purpose of Fed. R. Civ. P. 36, governing RFAs, 'is to allow for the narrowing or elimination of issues in a case.  The rule is not properly speaking a discovery device, rather it is procedure for obtaining admissions for the record of facts already known by the seeker.'" U.S. Bank Nat'l Assoc. v. Triaxx Asset Mgm't LLC, 18-CV-4044(BCM), 2020 WL 9549505, at *2 (S.D.N.Y. Nov. 30, 2020) (quoting Dubin v. E.F. Hutton Grp. Inc., 125 F.R.D. 372, 375 (S.D.N.Y. 1989)).  "The party requesting admissions bears the burden of setting forth its requests simply and directly, not vaguely or ambiguously." Id. (quoting BAT LLC v. TD Bank, N.A., 2018 WL 3626428, at *5 (E.D.N.Y. July 30, 2018)).  "Litigants are not required to answer RFAs that 'contain vague and ambiguous wording that does not allow [the answering party] fairly to admit or deny them.'" Id. (quoting Dubin, 125 F.R.D. at 376)).  "If an RFA overreaches, the answering party may seek a protective order quashing or limiting (not 'striking') the offending requests."  Id. at *3.

Moreover, "[c]ourts routinely disallow requests for admission that run into the hundreds on the grounds that they are abusive, unreasonable, and oppressive." Galgano v. Cnty. of Putnam, et al., No. 16 Civ. 3572 (KMK) (PED), 2021 WL 3159844, at *1 (S.D.N.Y. June 30, 2021).  Indeed, this Court has already "readily conclude[d]" that where, as here, there is a "single-plaintiff civil rights action," hundreds of such requests is "oppress[ive] and undu[ly] burden[some]." Id.; see Murray v. U.S. Dept. of Treas., No. 08-CV-15147, 2010 WL 3464914, at *2 (E.D. Mich. Sept. 1, 2010) ("182 requests for admission is oppressive and unduly burdensome" where there are "only two named Defendants [] and Plaintiff"); Joseph v. L. v. Conn. Dep't of Children & Families, 225 F.R.D. 400, 403 (D. Conn. 2005) (163 requests "excessive to the point of being abusive").

Here, Defendants have propounded 256 RFAs, well above the number that courts have found to be "abusive, unreasonable, and oppressive" for a "single-plaintiff civil rights action."  Galgano, 2021 WL 3159844, at *1.  Additionally, a number of Defendants' RFAs are exceedingly vague and ambiguous.  For instance, RFA No. 1 seeks an admission that Grainger had no "concerns" about working at WCC when she submitted her application, and RFA Nos. 14 and 15 request admissions regarding various purported "concerns."  The term "concerns," however, is wholly undefined and subject to numerous interpretations.  Additionally, RFA Nos. 5-12 ask Grainger to admit she has an "affiliation" to various country clubs through her husband.  Again, Defendants do not define the term "affiliation" and it is entirely lost on Grainger what Defendants mean when using the term.  In short, these RFAs are not simple and direct, and should be quashed.[2]

---

[2]     During a meet and confer on May 13, 2024, counsel for Defendants agreed to further define the terms "concerns" and "affiliation."  However, Defendants have not yet done so.



Hon. Victoria Reznik
May 13, 2024
Page 3

### III.   **EXPERT DISCOVERY**

Defendants have previously stated that they intend to utilize an expert witness as part of their case-in-chief.  As explained above, Grainger will not utilize an expert as part of her primary case, but reserves the right to employ a rebuttal expert.  She also reserves the right to depose Defendants' expert.  She cannot do either of these things, however, until Defendants have made the requisite expert disclosures.  Given the fast-approaching deadline, Defendants should be ordered to make the necessary disclosures or be precluded from utilizing an expert witness.

Respectfully submitted,

Valdi Licul

Cc: All Counsel of Record (*via* ECF)