JOHN T. MILLS
JTMILLS@GRSM.COM
DIRECT DIAL: (212) 453-0778



ATTORNEYS AT LAW
1 BATTERY PARK PLAZA, 28TH FLOOR
NEW YORK, NY 10004
WWW.GRSM.COM

May 20, 2024

**VIA ECF**
Hon. Victoria Reznik
United States Magistrate Judge
Southern District of New York
300 Quarropas Street, Room 420
White Plains, NY 10601-4150

      Re:   *Natalie Grainger v. Westchester Country Club, Inc., et al.*
             Civil Action No. 7:23-cv-01802

Dear Judge Reznik:

      This firm represents Defendants Westchester Country Club Inc., Mark Christiana and Tom Nevin (collectively, "Defendants") in connection with the above referenced matter. We write in response to Plaintiff's letter motion for discovery dated May 13, 2024. For the reasons stated in greater detail below, Plaintiff's attempts to prematurely and unduly limit Defendants' reasonable and necessary discovery should be disregarded.

      **I.   REQUEST FOR ADMISSIONS**

      On March 28, 2024, Defendants served their request for admissions ("RFAs") on Plaintiff. Subsequently, Plaintiff asked for – and received – a two-week extension of time to respond to these RFAs until May 13, 2024, without so much as raising a concern about any objection regarding the scope of the RFAs when Defendants consented to the extension. Then, merely days before Plaintiff's extended deadline to respond, Plaintiff raised her objection to the RFAs and indicated she would not be answering them at all. Defendants attempted to meet and confer with Plaintiff on this issue without success, and put Plaintiff on notice that, should she fail to respond to the RFAs by May 13, 2024, Defendants would deem the RFAs admitted.

      Plaintiff simply has no basis to argue that these RFAs are improper. Rule 36, "unlike other rules, contains no limitations on the number of RFAs that may be served." *Pasternak v. Dow Kim*, 2011 WL 4552389, at *5 (S.D.N.Y. Sept. 28, 2011) (denying a protective order for 230 RFAs, where there was a conclusory claim of burden and the Court determined that RFAs were served to streamline the litigation process). As such, "the large number of requests to admit is not in itself a basis for a protective order." *See Gen. Elec. Co. v. Prince*, 2007 WL 86940, at *2 (S.D.N.Y. Jan. 10, 2007) (protective order denied where 573 RFAs served were based on documents in discovery,

Page 2

the inquiries were highly relevant and were likely to narrow the scope of triable issues of fact, and the requests could be answered easily through review of the responding party's recordkeeping).

Plaintiff cites in her letter a case where the Court did grant a protective order where 329 RFAs were served, but the instant situation is easily distinguishable. *See Galgano v. Cnty of Putnam, et al.*, No. 16 Civ 3572 (KMK) (PAD), 2021 WL 3159844 at *1 (S.D.N.Y. June 30, 2021). In *Galgano*, the 329 RFAs came after 75 prior RFAs were served, meaning that 404 total RFAs had been served. Further, *Galgano* RFAs were also drafted to request the responding party adopt the serving party's "paraphrase of a communication, or adopt a truncated excerpt from a longer communication," which the Court determined would invite "nuanced, quibbling" responses rather than the admit/deny responses contemplated by the FRCP.

Cases cited in the *Galgano* holding are also easily distinguishable. In *Kandem-Ouaffo v. Balchem Corp.*, protective order was granted where a *pro se* plaintiff served a total of 737 RFAs, which were well over 250 pages long. The Court found that the requests were not proportional to the needs of the case and that many were "complex, argumentative, and unlikely to lead to helpful admissions." 2020 U.S. Dist. LEXIS 15648 at * 3-4 (S.D.N.Y. Jan. 29, 2020). In *Joseph L. v. Conn. Dep't of Children and Families*, a protective order was granted where 163 RFAs were served, because some had "up to ten sub-parts," were "wide-ranging, from accounting procedures, computer entry procedures, procedures for handling SSI benefits, specific admissions relating to Joseph's situation, procedures relating to food vouchers, etc.," which the Court found to be subjects that were mostly irrelevant to the claim itself. 225 F.R.D. 400, 403 (D.Conn. 2005).

Here, by contrast, Defendants' RFAs are extremely simple and relate to a central issue in the case: Plaintiff's alleged absences from her place of employment, which Defendants allege ultimately led to Plaintiff's justified employment termination. The RFAs do not request authentication of documents and are simple yes/no confirmations regarding Plaintiff's whereabouts on particular days, which are explicitly mentioned in all referenced documents and can easily be responded to based on a review of the documents which are in Plaintiff's possession. Rather than being harassing, the RFAs here are entirely in the spirit of Rule 36, as they are actually the most efficient way to get this information, and Plaintiff's responses will substantially narrow the issues in the case. Plaintiff's assertion that Defendants' RFAs are unduly burdensome merely due to the number of requests is impermissibly conclusory and without merit. *See Pasternak*, 2011 WL 4552389, at *5.

Plaintiff also raises an objection in her letter that the terms "affiliation" and "concern" as set forth in the RFAs are "exceedingly vague and ambiguous." Notably, Plaintiff's counsel raised this objection for the first time during our meet and confer on the morning of May 13, 2024, a mere hours before Plaintiff's letter motion was filed. This premature filing is antithetical to the spirit of meeting and conferring in an attempt to resolve discovery disputes prior to seeking court intervention, and must be noted. Notwithstanding the foregoing, Defendants provided the below definitions on May 15, 2024:

- Concern: any feelings of trepidation or hesitancy about working at Westchester Country Club due to any understanding that Plaintiff had about the work

Page 3

environment at Westchester Country Club, or working with any of the particular members at Westchester Country Club; and
- Affiliation: either a member herself or Plaintiff's husband is a member.

On May 17, 2024, Plaintiff's counsel advised that they maintain that these terms, as defined, are vague and ambiguous. Defendants disagree with this contention and request that the Court overrule this objection.

In light of the above, Plaintiff's failure to respond to Defendants' RFAs should not be excused, and all RFAs should be deemed admitted, or, in the alternative, the Court should require Plaintiff to promptly respond to all RFAs by a date certain, or any unanswered RFAs shall be deemed admitted.

## II. EXPERT DISCOVERY

Plaintiff's concern with any alleged failure of Defendants to disclose an expert witness is extraordinarily premature. As Plaintiff's counsel and the Court are aware, the parties are presently completing both fact discovery and expert discovery, with a deadline for completion of all discovery by June 14, 2024. The undersigned advised Plaintiff's counsel and the Court that certain outstanding fact discovery issues may have an impact on the scope of expert discovery, but nonetheless advised that the undersigned counsel would continue to work diligently to complete same in advance of the deadline. Indeed, counsel for both parties are still working to meet and confer regarding a number of issues pertaining to fact discovery, certain issues of which may require judicial intervention. Defendants will, of course, abide by all court-imposed deadlines and work with Plaintiff's counsel in this regard[1], but it is clear that Plaintiff's request is premature and court intervention is unnecessary.

We thank Your Honor for the Court's time and consideration in this matter.

Respectfully submitted,

GORDON REES SCULLY
MANSUKHANI, LLP

By:   */s/ John T. Mills*
      John T. Mills

CC:   All Counsel of Record (via ECF)

---

[1] To the extent that fact discovery issues remain outstanding as these dates approach, Defendants reserve the right to seek extension of these deadlines and the ultimate deadline for completion of discovery as discussed with the Court.